```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**E. ROSEMARIE GATEWOOD,**

        Plaintiff,

  vs.                              Civil Action 2:12-CV-221
                                        Judge Marbley
                                        Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court on *Plaintiff's Statement of Specific Errors*, Doc. No. 8, and the Commissioner's *Memorandum in Opposition*, Doc. No. 11.

Plaintiff E. Rosemarie Gatewood filed her application for benefits on May 20, 2008, alleging that she has been disabled since October 8, 2007. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on November 30, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Carl W. Hartung M.R.C., who testified as a vocational expert. *PAGEID* 71. In a decision dated January 31, 2011, the administrative law judge found that plaintiff had "not been under a disability, as defined in the Social Security Act, from October 8, 2007, through the date of

th[e] decision." *PAGEID* 45.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review.  *PAGEID* 27-29.

Plaintiff was 63 years of age on the date the administrate law judge issued her administrative decision.  *See PAGEID* 45, 75. Plaintiff has a high school education and some college credit. *PAGEID* 75.  Plaintiff was last insured for disability insurance purposes on December 31, 2012.  *PAGEID* 34.  Plaintiff has past relevant work experience as a supervisor, credit and loans.  *PAGEID* 97.  She has not engaged in substantial gainful activity since her alleged date of onset, October 8, 2007.  *PAGEID* 36.

## I. Evidence of Record

In August 2007, plaintiff presented to Mount Carmel East Hospital complaining of back pain.  *PAGEID* 203-05.  Upon examination, plaintiff showed diffuse tenderness in the distal lumbosacral area.  *Id*.  She was diagnosed with acute back strain with left sciatica.  *Id*.

In December 2008, x-rays of the lumbar spine showed moderate to severe degenerative changes in the lower lumbar spine.  *PAGEID* 259. X-rays of the right hip showed degenerative changes in the right greater trochanter.  *PAGEID* 258.

Plaintiff presented to the hospital twice more in November 2009, complaining of lower back pain radiating down the left buttock and leg.  *PAGEID* 280-83, 288-95.  On November 17, 2009, plaintiff was diagnosed with acute sciatica and was prescribed Percocet and Flexeril.  *PAGEID* 288-95.  On November 24, 2009, she was diagnosed

with a lower back strain with left sciatica, was prescribed Dilaudid and Phenergan, and was told to follow up with her doctor. *PAGEID* 280-83. X-rays taken at that time showed moderate degenerative changes with narrowing of disk spaces, sclerosis of endplates at L3-4, L4-5 and L5-S1, sclerosis of the facet joints posteriorly at L4-5 and L5-S1, and degenerat1ve changes of the lower dorsal spine with anterior osteophytes. *PAGEID* 284.

A December 2009 MRI of the lumbar spine documented degenerative disc disease with stenosis at L3-S1. *PAGEID* 303-04. A decompression and fusion from L3 to L5 was scheduled for February 2010, and plaintiff agreed to steroid injections until that surgery. *PAGEID* 308.

On January 27, 2010, David M. Vaziri, M.D., performed a lumbar decompression with fusion of L3 to L5. *PAGEID* 307. On February 18, 2010, plaintiff reported to Dr. Vaziri that she was "doing really well" and had no pain in her legs, although she asked for a shower chair. *Id*. Physical therapy was recommended, but plaintiff refused, stating that she was "too independent." *Id*.

On April 22, 2010, plaintiff again reported that she was doing better than prior to surgery and that her leg was better. *PAGEID* 306. Although she reported stiffness in her back, she again refused physical therapy. *Id*. X-rays of the lumbar spine showed "excellent alignment and position of her decompression L3 to L5." *Id*.

July 2010 x-rays showed cervical spondylosis.

In July 2008, plaintiff complained to Lora J. Brown, M.D., of pain in her right shoulder.  *PAGEID* 265.

On February 23, 2010, Dr. Vaziri administered a cortisone injection to plaintiff's right shoulder for right shoulder rotator cuff tendinitis/impingement syndrome.  *PAGEID* 360.  She reported ten months of pain relief after her previous cortisone injection.  *Id*.

On May 18, 2010, Dr. Vaziri performed a surgical repair of plaintiff's right rotator cuff.  *PAGEID* 315-17.  On June 4, 2010, plaintiff noted "only mild discomfort in the right shoulder."  *PAGEID* 359.  On July 6, 2010, plaintiff reported no pain in her right shoulder and continued improvement in its function.  *PAGEID* 358.  She had 90 degrees of forward flexion and abduction.  Dr. Vaziri directed plaintiff to proceed with range of motion exercises.  *Id*.  On July 27, 2010, plaintiff noted "no significant pain in the right shoulder at rest or with daily activities," and she reported a home exercise regimen "without difficulty."  *PAGEID* 357.  On August 31, 2010, plaintiff reported no pain at rest and minimal discomfort with sudden reaching or overhead activity.  *PAGEID* 356.  Plaintiff had 125 degrees of forward flexion and abduction and 4/5 external rotation and rotator cuff strength.  *Id*.  Dr. Vaziri counseled plaintiff on "continued overhead lifting, pushing and pulling restrictions."  *Id*

Plaintiff was also diagnosed with diabetes mellitus, *see PAGEID* 230, but has denied a history of neuropathy.  *PAGEID* 330.

**II.  November 30, 2010 Administrative Hearing**

Plaintiff testified at the administrative hearing that she drives to the store and to doctor appointments.  *PAGEID* 77.  She does laundry, watches television, cooks, goes out to eat regularly, and uses a computer.  *PAGEID* 83-84. In August 2008, she traveled as a passenger in a vehicle on a two day trip from Columbus, Ohio to Texas. *PAGEID* 78

Plaintiff testified that she quit work because she "couldn't sit long enough to talk to people on the phone."  *PAGEID* 82.  At the time that she retired in September 2007, she could sit for only 10 minutes before having to change positions.  *PAGEID* 89-90.

Plaintiff testified that she no longer experiences pain in her right shoulder. However, she still cannot curl her own hair.  *PAGEID* 85-86. Plaintiff "occasionally" experiences back pain and "flare-ups." *PAGEID* 87-88.  She sits in a chair to shower.  *PAGEID* 84.  She has constant numbness in her wrists and forearms.  *PAGEID* 92-94.

The vocational expert, Carl Hartung, testified that plaintiff's prior relevant work experience as a supervisor of credit and loans was sedentary and skilled. *PAGEID* 97.  Asked whether plaintiff could perform her past relevant work if she were limited to no overhead lifting and no pushing and pulling more than 20 pounds occasionally and 10 pounds frequently, Mr. Hartung responded that plaintiff could do so.  *PAGEID* 98.

**III. Administrative Decision**

In her decision, the administrative law judge found that

5

plaintiff's severe impairments consist of "diabetes mellitus, multilevel degenerative disc disease of the lumbar spine with stenosis, status post lumbar decompression and fusion procedure and status post right rotator cuff repair procedure." *PAGEID* 36. The administrative law judge determined that plaintiff's impairments "do not meet or medically equal any listed impairments." *PAGEID* 39.

The administrative law judge went on to find that plaintiff has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but is limited to pushing and pulling no more than 20 pounds occasionally and 10 pounds frequently and unable to perform overhead lifting." *Id*.

In considering plaintiff's RFC, the administrative law judge gave "controlling weight" to Dr. Vaziri's opinion. *PAGEID* 43. The administrative law judge also found that plaintiff's subjective complaints were not fully credible to the extent that they were inconsistent with the RFC assessment. *PAGEID* 39-44.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff is able to perform her past relevant work despite her severe impairments and that plaintiff was therefore not disabled within the meaning of the Social Security Act. *PAGEID* 44-45.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence

and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Citing D*eskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008), plaintiff first argues that the administrative law judge erred in not fully developing the record to include opinion evidence from a medical source about plaintiff's functional limitations. *Statement of Errors*, p. 8.  Plaintiff specifically argues that the administrative law judge should have either contacted plaintiff's treating physician, ordered a consultative examination or secured the

7

testimony of a medical expert at the administrative hearing. *Id*. at pp. 8-10. In this regard, plaintiff also argues that the administrative law judge erred by assessing plaintiff's RFC on the basis of bare medical findings, without a medical advisor's assessment. *Id*. The Commissioner argues that the RFC determination is reserved to the Commissioner and that the administrative law judge was not required to more fully develop the record. *Memorandum in Opposition,* pp. 5-8.

The RFC determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). In assessing a claimant's RFC, an administrative law judge must consider all relevant record evidence, including medical source opinions on the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Courts have stressed the importance of medical opinions to support a claimant's RFC, and have cautioned administrative law judges against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin*, 605 F.Supp.2d at 912).

In the case presently before the Court, the administrative law judge found that plaintiff had the RFC to "perform a full range of work at all exertional levels but is limited to pushing and pulling no more than 20 pounds occasionally and 10 pounds frequently and unable to perform overhead lifting." *PAGEID* 39. The record contains

8

medical evidence supporting the administrative law judge's RFC finding. On August 31, 2010, Dr. Vaziri, plaintiff's treating orthopedic surgeon, opined that plaintiff was "doing quite well," although she should continue "overhead lifting, pushing and pulling restrictions." PAGEID 356. The administrative law judge accorded "controlling weight" to Dr. Vaziri's opinion and included Dr. Vaziri's restriction in her RFC assessment. PAGEID 43. It is of no consequence that the administrative law judge did not recite Dr. Vaziri's opinion verbatim in her RFC finding. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). The fact that the record reflects no other medical restriction "can just as reasonably be interpreted to mean that no medical source thought [plaintiff] was significantly impaired." *Watson v. Comm'r of Soc. Sec.*, No. 5:11-cv-00717, 2012 WL 699788, at *5 (N.D. Ohio Mar. 1, 2012). "If anything, the dearth of opinions cuts in the Commissioner's favor." *Id*. *See also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008); *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The administrative law judge does have a "special, heightened duty to develop the record" when a claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 F. App'x at 459 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Here, however, plaintiff was represented by

counsel at the administrative hearing, see PAGEID 71. The administrative law judge did not, therefore, have a "special, heightened duty to develop the record." See *Trandafir*, 58 F. App'x at 115.

Moreover, *Deskin* "is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08CV2080, 2010 U.S. Dist. LEXIS 18644, at *6 (N.D. Ohio Mar. 1, 2010). In any event, an administrative law judge may make an RFC finding without a physician's assessment "'where the medical evidence shows relatively little physical impairment.'" *Kizys v. Comm'r of Soc. Sec.,* No. 3:10 CV 25, 2011 U.S. Dist. LEXIS 122296, *3 (N.D. Ohio oct. 21, 2011)(quoting *Deskin*, 605 F. Supp. 2d at 912). "Properly understood, *Deskin* . . . does not constitute a bright-line test" requiring medical source opinions in all circumstances in order to justify an RFC determination. *See id*. The administrative law judge "retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity." *Id*. (quoting *Deskin*, 605 F.Supp.2d at 912) (quotations omitted).

In the case presently before the Court, there is substantial support in the record for the administrative law judge's RFC finding, and she did not err in failing to further develop the record. As discussed *supra*, the RFC determination is supported by the opinion of

10

Dr. Vaziri, who recommended that plaintiff continue "overhead lifting, pushing and pulling restrictions." *See PAGEID* 356. No doctor offered an opinion of other or greater limitation of function. Indeed, the record reflects no opinion of disability or limitation due to plaintiff's medically determinable physical impairments.

Further, an administrative law judge is not required to refer a claimant for a consultative examination unless the record establishes that such an examination "'is necessary to enable the administrative law judge to make the disability decision.'" *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). It is within the administrative law judge's discretion whether to elicit the testimony of a medical expert at an administrative hearing. *See* 20 C.F.R. § 404.1529(b).

In short, this is not a case in which the administrative law judge interpreted medical records without the assistance of medical opinions regarding the claimant's capabilities. Plaintiff has not shown that it was necessary for the administrative law judge to obtain a consultative examination of plaintiff's RFC before rendering her decision, or that the administrative law judge abused her discretion in declining to call on a medical expert.

Plaintiff also argues that substantial evidence does not support the administrative law judge's finding that plaintiff can perform work activity at all exertional levels. *Statement of Errors*, pp. 10-13. Specifically, plaintiff argues that the administrative law judge erred

11

in failing to include a sit/stand limitation in plaintiff's RFC.  *Id*. As discussed *supra*, the administrative law judge gave "controlling weight" to the limitations suggested by plaintiff's own orthopedic surgeon, Dr. Vaziri, *see PAGEID* 43, and no other doctor opined that plaintiff was physically impaired or limited in any way.

To the extent that plaintiff's assignment of error challenges the administrative law judge's finding that plaintiff's subjective complaints were "not credible to the extent they are inconsistent with the" RFC, *see PAGEID* 40, that challenge is without merit.  A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, a court must look to the record to determine whether there is objective medical evidence of an underlying medical condition.  *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, the court must then determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id*. (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law

judge's unique opportunity to observe a witness' demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In this case, the administrative law judge noted and applied the applicable standards, performed an appropriate evaluation of the evidence and clearly articulated the bases of her credibility determination.  The administrative law judge devoted almost five pages to her consideration of plaintiff's subjective complaints, but found that those complaints were not fully credible.  *PAGEID* 40-44.  The analysis and the credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*,

specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 25, 2013                             *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                         United States Magistrate Judge